

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:12CR39

LUCIO DELEON-RAMIREZ

### MEMORANDUM OPINION

Lucio Deleon-Ramirez, a federal inmate proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 32).[1] Deleon-Ramirez contends that he experienced ineffective assistance of counsel[2] and prosecutorial misconduct and was denied due process in conjunction with his guilty plea and sentencing. Specifically, Deleon-Ramirez demands relief because:

> Claim One:   "Ineffective assistance of counsel during the pretrial, plea, and sentencing process, when counsel failed to timely negotiate a favorable plea agreement." (§ 2255 Mot. 4.)

> Claim Two:   "Ineffective assistance by failing to advocate for a downward departure under the Fast-Track Program, § 3553 factors,

---

[1] The Court employs the pagination assigned to Deleon-Ramirez's submissions by the CM/ECF docketing system. The Court corrects the spelling, punctuation, capitalization, and spacing in the quotations from Deleon-Ramirez's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

§  5K3.1  (procedural  error—sentencing
disparities)."  (Id.)

Claim Three:  "Prosecutorial  misconduct—illegal
conviction  and  due  process  violation:
(including  non-harmless  error  in  Fast
Track  and  [United  States  Sentencing
Guideline  §]  2I1.2  enhancements."
(Id.)

Deleon-Ramirez  submitted  a  memorandum  in  support  of  his  § 2255

Motion  (ECF  No. 33).   The  Government  has  responded,  asserting

that  Deleon-Ramirez's  claims  lack  merit.   (ECF  No. 36.)   Deleon-

Ramirez  has  filed  a  reply.   (ECF  No. 37.)   For  the  reasons  set

forth  below,  Deleon-Ramirez's  § 2255  Motion  (ECF  No. 32)  will  be

denied.


## I.  PROCEDURAL HISTORY

On  March  6,  2012,  a  grand  jury  charged  Deleon-Ramirez  with

one  count  of  illegal  reentry.   (Indictment  1,  ECF  No. 1.)   On

April  25,  2012,  Deleon-Ramirez  appeared  before  the  United  States

Magistrate  Judge  and  pled  guilty  to  the  one-count  Indictment.

(Apr.  25,  2012  Tr.  13-14.)

On  August  9,  2012,  the  Court  entered  judgment  against

Deleon-Ramirez  and  sentenced  him  to  48  months  of  imprisonment,

to  be  served  consecutively  to  his  state  sentence.   (J.  2,  ECF

No. 21.)   On  appeal,  Deleon-Ramirez  argued  that  his  sentence  was

unreasonable,  and  that  the  Court  erred  by  imposing  three  (3)

2

years of supervised release given that Deleon-Ramirez was a deportable alien.  See United States v. Deleon-Ramirez, 542 F. App'x 241, 242 (4th Cir. 2013).  The United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment. Id. at 247.

## II.  ANALYSIS

### A.  Ineffective Assistance Of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  In

analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  Id. at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of Strickland to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Of course, in conducting the foregoing inquiry, the representations of the convicted defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"  United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations

4

omitted).   Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.   No circumstances exist here that would lead the Court to consider Deleon-Ramirez's prior sworn statements as other than truthful.

### 1.   Claim One—Ineffective Assistance Regarding Plea

In Claim One, Deleon-Ramirez asserts that counsel was ineffective for failing to "timely negotiate a favorable plea agreement." (§ 2255 Mot. 4.)   In his Memorandum, Deleon-Ramirez suggests that counsel should have negotiated a written plea agreement pursuant to a "fast-track program."   (Mem. Supp. § 2255 Mot. 5.)

As this Court has previously stated:

Fast-track programs began informally in districts along the Mexican border, where district courts were increasingly overwhelmed by high caseloads related to immigration violations.   To alleviate this burden, federal prosecutors engaged in charge-bargaining and agreed to move for downward departures in return for expedited guilty pleas.   Congress formally sanctioned such early disposition programs in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 401(m)(2)(B), 117 Stat. 650, 675 (2003), in which it authorized the Attorney General to create

and implement programs to aid jurisdictions
overwhelmed by high caseloads related to a particular
offense or category of offenses. Congress also
directed the Sentencing Commission to promulgate a
policy statement authorizing a departure of not more
than four levels in cases where the United States
moved for a downward departure pursuant to an early
disposition program. The Commission complied in
U.S.S.G. § 5K3.1.

United States v. Hernandez-Montealegre, 445 F. Supp. 2d 646, 658

(E.D. Va. 2006) (citing United States v. Perez-Pena, 453 F.3d

236, 238 (4th Cir. 2006)). "However, no such early disposition

program has been authorized in the Eastern District of

Virginia." Id. at 659. Because no such fast-track program has

been authorized in the Eastern District of Virginia, Deleon-

Ramirez cannot demonstrate deficiency or prejudice. Given this,

the Court cannot conclude that counsel's performance was

deficient by failing to attempt to negotiate for a "fast-track"

plea agreement that had no chance of success. Cf. Beamon v.

United States, 189 F. Supp. 2d 350, 357 (E.D. Va. 2002)

(explaining that "there can be no deficient performance or

prejudice to the defendant in counsel's failure to argue

meritless issues at trial, sentencing, or on appeal").

In his Memorandum, Deleon-Ramirez expands upon his claim to

argue that counsel was ineffective because she "failed to advise

[him] 'that he could be sentenced to a longer term of

imprisonment' than the two-year sentence for the underlying

offense."  (Mem. Supp. § 2255 Mot. 5.)  However, during the Rule 11 proceedings, the Magistrate Judge informed Deleon-Ramirez that the maximum penalty was ten (10) years of incarceration. (Apr. 25, 2012 Tr. 7.)  Deleon-Ramirez responded that he understood.  (Apr. 25, 2012 Tr. 7.)  The Magistrate Judge further informed Deleon-Ramirez that any sentencing estimate he may have received from counsel "can only be a prediction and no kind of promise."  (Apr. 25, 2012 Tr. 12.)  Deleon-Ramirez again responded that he understood.  (Apr. 25, 2012 Tr. 12.)  He further agreed that he understood that the Court could "depart upward or downward from the recommended guideline range."  (Apr. 25, 2012 Tr. 12.)  Because the Magistrate Judge properly informed Deleon-Ramirez of the maximum penalty and that he could not rely upon any estimate provided by counsel, Deleon-Ramirez cannot demonstrate prejudice following from any misinformation, or lack of information, from his counsel with respect to his sentence.  See United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995).

Deleon-Ramirez also claims that "he was not warned of the effect of his immigration status on his sentence including deportation as expected in Padilla v. Kentucky," 559 U.S. 356 (2010).  (Mem. Supp. § 2255 Mot. 6.)  In Padilla, the Supreme Court held that "[i]t is quintessentially the duty of counsel to

7

provide her client with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the <u>Strickland</u> analysis." 559 U.S. at 371 (internal quotation marks omitted) (citation omitted).

During the Rule 11 proceedings, counsel for the Government stated that Deleon-Ramirez would be subject to immigration consequences, including "deportation at the conclusion of these proceedings." (Apr. 25, 2012 Tr. 3.) Furthermore, the Magistrate Judge informed Deleon-Ramirez that by pleading guilty to a felony, he "would be removed from the United States and it could affect [his] ability to reenter the United States on any kind of legal basis again." (Apr. 25, 2012 Tr. 8.) Deleon-Ramirez replied that he understood. (Apr. 25, 2012 Tr. 8.) Even with those warnings, Deleon-Ramirez still chose to plead guilty to the charge of illegal reentry. (Apr. 25, 2012 Tr. 13-14.) Moreover, the Court takes judicial notice that in 2010, when Deleon-Ramirez was sentenced for his first conviction for illegal reentry, this Court advised Deleon-Ramirez that he would be subject to deportation. (May 21, 2010 Tr. 13, <u>United States v. Deleon-Ramirez</u>, No. 3:10CR17 (E.D. Va. 2010).); <u>see</u> <u>Lolavar v. de Santibanes</u>, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking judicial notice of court records). Given the Rule 11 colloquy and the prior warning given to Deleon-Ramirez, the Court

concludes that Deleon-Ramirez has not shown that he was prejudiced by counsel's alleged failure to advise him concerning possible deportation. See United States v. Fazio, 795 F.3d 421, 427 (3d Cir. 2015) (holding that any error in counsel's advice concerning immigration consequences "was remedied by the District Court's in-depth colloquy and the language of the plea agreement itself"); cf. Foster, 68 F.3d at 88 (noting that even if the petitioner's counsel provided incorrect advice about sentencing, petitioner "was in no way prejudiced by such information given the trial court's careful explanation of the potential severity of the sentence"). Indeed, given his circumstances, it is palpably incredible for Deleon-Ramirez to suggest that he failed to appreciate that he would be deported.

Finally, Deleon-Ramirez asserts that "[c]ounsel unprofessionally failed to advise [him] as to all facts and law relevant to his decision to plead guilty." (Mem. Supp. § 2255 Mot. 9-10.) He claims that if counsel had fully advised him, "there is a reasonable probability that he would have pleaded not guilty and proceeded to trial and/or proceeded to a bench trial on stipulated facts and/or pleaded to a favorable plea agreement." (Id. at 10.)

As an initial matter, Deleon-Ramirez has not sufficiently demonstrated that, but for counsel's alleged deficient

9

performance, "he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Moreover, Deleon-Ramirez's assertion is belied by the record. During the Rule 11 proceedings, Deleon-Ramirez confirmed that he had received a "sufficient opportunity" to discuss his case with counsel. (Apr. 25, 2012 Tr. 8.) He further affirmed that he was "entirely satisfied" with everything counsel had done for him. (Apr. 25, 2012 Tr. 8.) Given these statements, Deleon-Ramirez's claim that counsel failed to advise him on the relevant facts and law is "palpably incredible." See Lemaster, 403 F.3d at 221. (internal quotation marks omitted) (citation omitted). Because Deleon-Ramirez has failed to demonstrate both deficient performance and prejudice, Claim One will be dismissed.

### 2. Claim Two—Ineffective Assistance Regarding Sentencing And Direct Appeal

In Claim Two, Deleon-Ramirez asserts that counsel was ineffective for failing to advocate for a downward departure pursuant to § 5K3.1 of the United States Sentencing Guidelines. (§ 2255 Mot. 4.) That Guideline provides that "[u]pon motion by the Government, the court may depart downward no more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States

Attorney for the district in which the court resides." U.S. Sentencing Guidelines Manual, § 5K3.1 (U.S. Sentencing Comm'n 2014) ("USSG"). However, it is clear that "U.S.S.G. § 5K3.1 requires a motion *by the government*—not defense counsel." United States v. Gonzalez-Garcia, Nos. 3:10CR308-20, 3:12CV370, 2015 WL 3646636, at *4 (E.D. Va. June 10, 2015). Accordingly, counsel could not be ineffective for failing to file a motion for a downward departure pursuant to USSG § 5K3.1.

In his Memorandum, Deleon-Ramirez expands upon Claim Two to assert that counsel should have argued for a downward departure based upon "the disparity created by the 'fast-track program.'" (Mem. Supp. § 2255 Mot. 4.) However, the Fourth Circuit has held that courts may not grant a variance due to sentencing disparities caused by a fast-track program not being available in the district of prosecution. Perez-Pena, 453 F.3d at 244. Accordingly, the Court cannot conclude that counsel was ineffective by failing to make an argument that had no chance of success, and Deleon-Ramirez cannot demonstrate that he was prejudiced thereby. See Beamon, 189 F. Supp. 2d at 357.

Finally, in his Memorandum, Deleon-Ramirez argues that "[c]ounsel unprofessionally failed to investigate or present available evidence and legal authority material to the sentencing," and that he was "prejudiced by the objectively

11

unreasonable performance of counsel during the sentencing process." (Mem. Supp. § 2255 Mot. 10.) He also asserts that "[c]ounsel unprofessionally failed to investigate or present the strongest issues available to defendant for his direct appeal and failed to preserve viable issues for collateral review." (Id.) However, Deleon-Ramirez has failed to allege what evidence counsel should have presented at sentencing and what issues she should have raised on direct appeal. See Call v. Polk, 454 F. Supp. 2d 475, 499 (W.D.N.C. 2006) ("When a habeas petitioner claims that trial counsel was ineffective without explaining in what manner the performance was lacking, the reviewing court is not obliged to supply the grounds for relief."). Simply put, Deleon-Ramirez has failed to demonstrate both deficient performance and prejudice. Accordingly, Claim Two will be dismissed.

**B.    Prosecutorial Misconduct and Due Process Violation**

In Claim Three, Deleon-Ramirez claims that prosecutorial misconduct occurred and that his conviction and sentence are tainted by a violation of due process. (§ 2255 Mot. 4.) Deleon-Ramirez asserts that he was "deported and removed without judicial review based on a voluntary 'stipulated order of removal' without judicial review." (Id.) Such a conclusory allegation without any factual support fails to establish a

12

claim for relief.  See Sanders v. United States, 373 U.S. 1, 19
(1963) (finding denial of § 2255 motion appropriate where it
"stated only bald legal conclusions with no supporting factual
allegations").

In his Memorandum, Deleon-Ramirez expands upon his claim to
argue that "the [C]ourt abused its sentencing discretion by
using a sentence that is substantively unreasonable."  (Mem.
Supp. § 2255 Mot. 6.)  However, this claim is barred from review
here because the Fourth Circuit rejected it on direct review,
and Deleon-Ramirez fails to direct the Court to an intervening
change in the law that would warrant its reconsideration.  See
United States v. Linder, 552 F.3d 391, 396-97 (4th Cir. 2009)
(citing cases); Boeckenhaupt v. United States, 537 F.2d 1182,
1183 (4th Cir. 1976).  Accordingly, Claim Three will be
dismissed.

## III. CONCLUSION

For the foregoing reasons, Deleon-Ramirez's § 2255 Motion
(ECF No. 32) will be denied.  The action will be dismissed.

An appeal may not be taken from the final order in a § 2255
proceeding unless a judge issues a certificate of appealability
("COA").  28 U.S.C. § 2253(c)(1)(B).  A COA will not issue
unless a prisoner makes "a substantial showing of the denial of

13

a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Deleon-Ramirez has not satisfied this standard. Accordingly, the Court will deny a certificate of appealability.

The Clerk is directed to send a copy of the Memorandum Opinion to Deleon-Ramirez and counsel of record.

It is so ORDERED.

/s/    R EV

Robert E. Payne
Senior United States District Judge

Date: October 9, 2015
Richmond, Virginia

14